```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
MOTOROLA SOLUTIONS, INC.,           :    14 Civ. 206 (LTS)(HBP)

                  Plaintiff,        :
                                         OPINION
     -against-                      :    AND ORDER

XEROX BUSINESS SERVICES, LLC,       :

                  Defendant.        :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By notice of motion dated February 9, 2016 (Docket Item ("D.I.") 35), plaintiff moves for leave to file an amended complaint. Plaintiff's proposed amended complaint seeks to add a claim for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").

II. Background

Plaintiff commenced this action on January 10, 2014, asserting a single claim for breach of contract (Complaint, dated Jan. 10, 2014 (D.I. 1) ("Compl.")). The complaint alleges that, in December 2002, plaintiff entered into a Human Resources Services Agreement (the "Agreement") with defendant's predeces-

sor, Affiliated Computer Services, Inc. ("ACS"), pursuant to which ACS agreed to administer plaintiff's retirement plan (the "Plan") in accordance with the documents and instruments governing the Plan (Compl., ¶¶ 1-2, 9). As alleged in the complaint, ACS breached the Agreement by miscoding eighteen former employees as eligible participants in the Plan when those individuals were actually ineligible to receive benefits under the Plan (Compl., ¶¶ 1-4, 9-13).

On May 23, 2014, the Honorable Laura Taylor Swain, United States District Judge, entered a pre-trial scheduling order which set a deadline of June 30, 2014 for "[a]ll applications to amend pleadings" (Pre-Trial Scheduling Order, dated May 23, 2014 (D.I. 13), ¶ 1). The parties subsequently requested, and were granted, several extensions of the various discovery deadlines set forth in the initial pre-trial scheduling order (D.I. 16; D.I. 18; D.I. 19; D.I. 24). However, the deadline to amend the pleadings was never extended beyond the original deadline of June 30, 2014.

In January and February of this year, plaintiff took the depositions of defendant's Rule 30(b)(6) witness, Diane Conarchy, and two of defendant's former employees, Michael Eralie and Dawn Lynch (Memorandum in Support of Motorola's Motion for Leave to File First Amended Complaint, dated Feb. 9, 2016 (D.I.

2

36) ("Pl. Memo"), at 5-6). Plaintiff argues that these depositions revealed "key facts that now provide [plaintiff] with an indisputable claim for breach of fiduciary duty under ERISA" (Pl. Memo, at 5).

Specifically, plaintiff cites to the following testimony from Lynch:

> Q. BY MR. GEKAS: Do you see the definition of claims administer [sic]?
>
> A. Yes.
>
> Q. It says: Claims administer [sic] means the entity or entities as set forth in the SPD. That's the summary plan description; right?
>
> A. Uh-huh.
>
> Q. That Motorola has retained to decide eligibility, claims for benefits and appeals on denied claims, under the plan, pursuant to the powers and authorities delegated as contemplated by section 17. Right?
>
> A. Yes, that's what it says.
>
> Q. And ACS/Xerox was the claims administrator, right?
>
> A. We were processing claims, yes.
>
> \*    \*    \*
>
> Q. You already agreed with me that Xerox was the claims administrator under the plan in 2012; right?
>
> A. Yes.

(Declaration of John C. Gekas, dated Feb. 9, 2016 (D.I. 36-1) ("Gekas Decl."), Ex. A-4, 68:9-24, 124:23-125:1; see also Pl.

Memo, at 8 (indicating that the document being discussed in this exchange is the Plan); Gekas Decl., Ex. A-1, ¶ 36 (same)).[1]

During the deposition, plaintiff's counsel also asked about several provisions of the Agreement's Statement of Work (the "SOW")[2], which was prepared in 2006. Plaintiff's counsel asked Lynch to confirm that the quoted provisions outlined ACS's duties under the Agreement. Specifically, Lynch confirmed that the SOW provided that it was ACS's responsibility to (1) "determine eligibility," (2) act as "the source and system of record for eligibility," (3) "[a]ct in correspondence with the documents and instruments governing the plan" and (4) act as the "[p]rimary party to construe and interpret the plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time of payment of any FSA/DCA plan benefits" (Gekas Decl., Ex. A-7, 56:2-57:25; see also Gekas Decl., Ex. A-1, ¶¶ 40-42 (indicating that the document being discussed during this exchange is the SOW); Defendant Xerox Business Services, LLC's Memorandum of Law Opposition to Plaintiff's Motion for Leave to

---

[1] Neither plaintiff nor defendant has submitted the pages of the Plan referenced by plaintiff's counsel in this deposition excerpt. The parties have also failed to submit the Plan's summary plan description.

[2] Neither party has submitted the portions of the SOW discussed in the deposition testimony that is cited in connection with this motion.

4

File First Amended Complaint, dated Mar. 11, 2016 (D.I. 52) ("Def. Memo"), at 4 n.9 (same)).

During Eralie's deposition, plaintiff's counsel elicited similar testimony. Like Lynch, Eralie confirmed that it was ACS's responsibility under the SOW and the Agreement to "act in correspondence with the documents and instruments governing the plan" and act as the "primary party to construe, interpret the plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time of payment of any plan benefits" (Gekas Decl., Ex. A-8, at 38-39; see also Def. Memo, at 4 n.9). Eralie also agreed with plaintiff's counsel's characterization of these responsibilities as "fiduciary duties that Motorola had delegated to ACS" (Gekas Decl., Ex. A-8, at 38-39; see also Gekas Decl., Ex. A-5, at 37 (Eralie testifying that ACS's "fiduciary responsibilities were those that equaled that of a plan administrator")).[3]

Finally, like Lynch, Conarchy -- defendant's Rule 30(b)(6) witness -- testified during her deposition that "ACS was

---

[3]Later in his deposition, however, Eralie contradicted this testimony, stating that ACS was not a fiduciary of the Plan and that "ACS's role was to assist Motorola in the fulfillment of Motorola's carrying out its fiduciary duties" (Gekas Decl., Ex. A-10, at 78-79). Eralie also stated that "my dilemma here is sometimes I don't know what the legal interpretation of some of these words is" (Gekas Decl., Ex. A-10, at 79).

the claims administrator under the plan" (Gekas Decl., Ex. A-6, at 41).

Notwithstanding this testimony, defendant argues that plaintiff's motion for leave to amend should be denied because (1) the motion is untimely under the current scheduling order and (2) the proposed amendments are futile.

III. Analysis

   A.   Legal Standards

The standards applicable to a motion for leave to amend a pleading are well-settled and require only brief review.  In general, a motion for leave to amend is governed by Fed.R.Civ.P. 15(a), which provides that leave to amend should be freely granted "when justice so requires."  Foman v. Davis, 371 U.S. 178, 182 (1962); McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).  "Nonetheless, a court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile."  First Mercury Ins. Co. v. 613 N.Y. Inc., 11 Civ. 2819 (PAC), 2013 WL 1732793 at *2 (S.D.N.Y. Apr. 22, 2013) (Crotty, D.J.), aff'd, 609 F. App'x 664 (2d Cir. 2015), citing Lee v. Regal Cruises, Ltd., 916 F. Supp.

6

300, 303 (S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir. 1997).

Where a motion for leave to amend is made after the deadline set for such motions in a Rule 16 Scheduling Order, however, the party seeking amendment must meet a more rigorous standard.  "Where a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  Grochowski v. Phoenix Constr., 318 F.3d 80, 86 (2d Cir. 2003); see also Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007) ("Rule 16(b) also may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed.").

> To satisfy the good cause standard "the party must show that, despite its having exercised diligence, the applicable deadline could not have been reasonably met."  Sokol Holdings, Inc. v. BMD Munai, Inc., No. 05-CV-3749, 2009 WL 2524611, at *7 (S.D.N.Y. Aug. 14, 2009) (citing Rent-A-Center Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003)).  However, the good cause standard is not satisfied when the proposed amendment rests on information "that the party knew, or should have known, in advance of the deadline."  Id. (collecting cases).

Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010); accord Parker v. Columbia Pictures Indus., 204 F.3d 326,

7

340 (2d Cir. 2000) ("'[G]ood cause' depends on the diligence of the moving party."); <u>Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.</u>, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (Engelmeyer, D.J.) ("To show good cause, a movant must demonstrate that it has been diligent, meaning that, despite its having exercised diligence, the applicable deadline could not have been reasonably met." (citations omitted)). "The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendant[]." <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, <u>supra</u>, 496 F.3d at 244; <u>accord</u> <u>Gorman v. Covidien Sales, LLC</u>, 13 Civ. 6486 (KPF), 2014 WL 7404071 at *2 (S.D.N.Y. Dec. 31, 2014) (Failla, D.J.).

B.   <u>Application</u>

As an initial matter, because the pre-trial scheduling order set a deadline of June 30, 2014 for amending the pleadings, plaintiff must satisfy Rule 16(b)'s "good cause" standard. <u>iMedicor, Inc v. Access Pharm., Inc.</u>, 290 F.R.D. 50, 52 (S.D.N.Y. 2013) (Briccetti, D.J.) ("[R]egardless of whether Rule 15(a) is satisfied, plaintiff must demonstrate good cause for modifying the scheduling order under Rule 16(b)); <u>accord</u> <u>Kassner v. 2nd</u>

8

Ave. Delicatessen, Inc., supra, 496 F.3d at 244 ("[W]e hold that amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b).").

Plaintiff argues that it was diligent in filing its motion for leave to amend and, therefore, that "good cause" exists to amend the scheduling order. Specifically, plaintiff argues it was diligent because it filed its motion immediately after the depositions of Lynch, Eralie and Conarchy, which plaintiff characterizes as "recently acquired evidence [that] indisputably establishes a viable claim for breach of fiduciary duty" (Pl. Memo, at 6; Reply in Support of Motorola's Motion for Leave to File First Amended Complaint, dated Mar. 25, 216 (D.I. 65) ("Pl. Reply"), at 3 ("Motorola was certainly diligent in filing its motion within days of Xerox's admissions.")).[4] Plaintiff also argues that its motion should be granted because

---

[4] In particular, plaintiff relies on the witnesses' statements that ACS was the "claims administrator" or "plan administrator" and argues that acting in such a capacity conferred fiduciary duties on ACS (see Pl. Memo, at 7, citing, inter alia, Aetna Health Inc. v. Davila, 542 U.S. 200, 218-19 (2004) ("[B]enefit determination is part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan.")). Plaintiff also relies on Eralie's testimony that ACS's "fiduciary responsibilities were those that equaled that of a plan administrator" (Gekas Decl., Ex. A-5).

9

"discovery in this case did not begin in earnest until relatively recently for several legitimate reasons, including the parties' ongoing efforts to settle the case" and, therefore, "the timing of Motorola's motion is in line with the schedule of this case" (Pl. Reply, at 3).

Defendant disputes that plaintiff has acted diligently, arguing that the deposition testimony upon which plaintiff relies "merely relates to the witnesses' acknowledgment of, and at times attempts to interpret, the language in documents that Plaintiff has had in its possession since long before it filed the case in January of 2014" (Def. Memo, at 4).

Defendant's argument is persuasive.  While plaintiff characterizes the deposition testimony as "recently acquired evidence [that] indisputably establishes a viable claim for breach of fiduciary duty," plaintiff does not explain why the SOW, the Plan and the Agreement did not provide it with the information necessary to assert its ERISA claim when it commenced this action and, therefore, why the deadline set in the scheduling order "could not have been reasonably met" before taking the witnesses' depositions.  Sokol Holdings, Inc. v. BMD Munai, Inc., 05 Civ. 3749 (KMW)(DF), 2009 WL 2524611 at *7 (S.D.N.Y. Aug. 14, 2009) (Freeman, M.J.) (citations omitted); see also F.W. Webb Co. v. State St. Bank & Trust Co., 09 Civ. 1241 (RJH), 2010 WL

10

3219284 at *9 (S.D.N.Y. Aug. 12, 2010) (Holwell, D.J.) ("Where ERISA plan fiduciaries and a service provider enter into a written contract, that contract logically serves as the starting point and primary reference for any analysis of whether the service provider performed duties that give rise to fiduciary responsibilities under ERISA."). Further, a review of the deposition testimony upon which plaintiff relies demonstrates that plaintiff's proposed ERISA claim is based primarily, if not wholly, on the terms of those documents -- not the statements made by defendant's witnesses.

For instance, in Lynch's deposition, plaintiff's counsel simply recited the terms of the SOW and the Plan and asked Lynch to confirm that those documents provided what had been quoted and to confirm that, pursuant to those documents, ACS "process[ed] claims" (Gekas Decl., Ex. A-4, 68:22-24; see Gekas Decl., Ex. A-7). Similarly, the excerpted portions of Eralie and Conarchy's testimony also consist of those witnesses merely confirming that the terms of the SOW and the Plan provide that ACS was to act as "plan administrator" or "claims administrator" (Gekas Decl., Exs. A-5, A-6, A-8). Further, Eralie's characterization of some of ACS's duties as "fiduciary responsibilities" does not alter this analysis; Eralie's deposition testimony makes

11

clear that his characterization was based on the terms of the SOW:

> Q. Okay. Is it your position -- is it your testimony that ACS did not have any fiduciary responsibilities under the plan?
>
> A. Our . . . fiduciary responsibilities were those that equaled that of a plan administrator . . . .
>
> \* \* \*
>
> Q. . . . . So the only fiduciary duties that ACS had of the plan were those that Motorola had specifically delegated to ACS; right?
>
> A. Correct.
>
> Q. <u>And those duties are set forth in the statement of work, which is part of the contract; right?</u>
> A. <u>Yes.</u>

(Declaration of Edward K. Lenci, dated Mar. 11, 2016 (D.I. 53), Ex. 1, 42:14-43:5 (emphasis added)).

Additionally, as plaintiff argues in attempting to minimize Eralie's subsequent testimony that ACS was not a fiduciary, Eralie's statement that the SOW set forth ACS's fiduciary responsibilities is of little import because whether ACS was a fiduciary of the Plan is a "legal conclusion," not a factual one (Pl. Memo, at 11 n.7). In sum, none of the deposition testimony cited by plaintiff discloses any factual information that is not contained within the terms of the Plan, the SOW or the Agreement

12

-- documents which plaintiff had in its possession since at least 2006.

Finally, the proposed amended complaint makes clear that plaintiff's ERISA claim is based primarily on the terms of the Agreement, the Plan and the SOW.  The proposed amended complaint alleges that "ACS/Xerox was delegated certain responsibilities under the Plan pursuant to the Agreement identified above, including the obligation to 'decide eligibility' as the Claims Administrator" and that "[i]n the Agreement, Xerox acknowledged its fiduciary status to the Plan" (Gekas Decl., Ex. A-1, ¶¶ 37-38).  Accordingly, because plaintiff's proposed ERISA claim is based on information that plaintiff "knew, or should have known, in advance of the [scheduling order's] deadline," plaintiff has failed to show "good cause" under Rule 16(b). Sokol Holdings, Inc. v. BMD Munai, Inc., supra, 2009 WL 2524611 at *8 (citations omitted); accord Parker v. Columbia Pictures Indus., supra, 204 F.3d at 340-41 (denying leave to amend to add a breach-of-contract claim where plaintiff claimed "he did not discover his contractual entitlement . . . until receiving [defendant's] motion for summary judgment" because plaintiff "had all the information necessary to support a breach of contract claim" when he filed his complaint); iMedicor, Inc v. Access Pharm., Inc., supra, 290 F.R.D. at 53 (no good cause shown where

13

the proposed new claims "ar[ose] out of the same facts upon which plaintiff relie[d] in bringing its [original] breach of contract claims"); Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., supra, 889 F. Supp. 2d at 458-59 ("Perfect has not shown good cause under Rule 16 for waiting until November 2011 to act on information that was clearly in its possession some 10 months earlier.").[5]

IV. Conclusion

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is denied.

Dated:  New York, New York
        May 17, 2016

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All parties

---

[5] Because I conclude that plaintiff has failed to satisfy Rule 16(b), I do not address defendant's arguments that plaintiff's proposed claim for breach of fiduciary duty is futile.

14