UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MOTOROLA SOLUTIONS, INC.,

       Plaintiff,

  -v-                                No.  14 CV 00206-LTS

XEROX BUSINESS SOLUTIONS, LLC,

       Defendant.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

In this breach of contract action, Motorola Solutions, Inc. ("Motorola") alleges that Xerox Business Solutions, LLC ("Xerox") erroneously paid out retiree benefits under Motorola's Post-Employment Health Benefits Plan (the "Plan") in violation of Xerox's contractual obligations as a claims administrator for the Plan.  Motorola now moves for summary judgment on its breach of contract claim and on Xerox's affirmative defenses.  Xerox cross-moves for dismissal of the breach of contract claim.

The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332.

The Court has reviewed carefully the parties' submissions.  For the following reasons, Motorola's motion for summary judgment is granted with respect to Xerox's Sixth and Ninth affirmative defenses and is denied in all other respects.  Xerox's motion is denied in its entirety.

<u>BACKGROUND</u>

Unless otherwise indicated, the following facts are undisputed.[1]

On or about December 19, 2002, Motorola entered into a Human Resources Services Agreement (the "Agreement") with Xerox's predecessor in interest, Affiliated Computer Services, Inc. ("ACS") (Pl. 56.1 ¶ 1; <u>see also</u> Forsberg Decl. Ex. 2, docket entry no. 89-2.)  It is undisputed that Xerox administered the Plan pursuant to the Agreement.  (Def. Resp. to Pl. 56.1 ¶ 6-7; <u>see also</u> Forsberg Decl. ¶ 6.)  Under the Plan, Motorola, as the fiduciary of the Plan and Plan Administrator, was authorized to delegate administrative authority to a third-party or "Claims Administrator," which is defined by the Plan as the "entity or entities, as set forth in the SPD [i.e. Summary Plan Description], that Motorola has retained to decide eligibility, claims for benefits and appeals on denied claims under the Plan, pursuant to powers and authorities delegated as contemplated by [the Plan provisions permitting the delegation of responsibilities]." (Pl. 56.1 ¶¶ 3, 10.)  Xerox admits that it was retained by Motorola as a "Claims Administrator," but denies that it was given responsibility for determining eligibility for benefits under the Plan. (<u>See</u> <u>id.</u> ¶¶ 8-9.)  Xerox's witnesses allege that Motorola made eligibility determinations and provided the relevant information to Xerox.  (<u>See, e.g.</u>, Def. Resp. to Pl. 56.1 ¶ 8.)

Section 3.6(b) of the Agreement ("Employee Information") provided, <u>inter</u> <u>alia</u>, that "[Motorola] shall provide, or cause [Motorola's] Third Party Providers and, where

---

[1]   The facts recited herein are undisputed unless otherwise indicated. Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1 or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1" or "Pl. 56.1") incorporate by reference the parties' citations to underlying evidentiary submissions.

applicable, [Motorola's] Affiliates, to provide to [Xerox] the employee data and job applicant data and all other data necessary for [Xerox] to perform the Services, including information as to the benefits eligibility of employees and status of each plan participant (and any dependent or beneficiary) . . . ."  Section 3.6(d) ("Accuracy of Customer Data") provided that "[Motorola] shall be solely responsible for the accuracy and completeness of any information, materials or data that [Motorola], its Affiliates or any TPP provides to [Xerox], and for the accuracy and completeness of transmission to [Xerox] of such information, materials or data."

Section 3.1 of the Agreement ("Services") recites that the respective responsibilities of Xerox and Motorola in connection with the services to be provided under the Agreement were to be set forth in Exhibits attached to the Agreement, "(in particular, Exhibits 3.1 and 3.1A) and any applicable Change Order."  Written "Change Orders," executed in accordance with the "Change Control" provisions of Section 3.5 of the Agreement, were required to effect changes to the services provided under the Agreement.  Section 1.4(i) of the Agreement provides that references to the "Agreement" include the Exhibits and Schedules thereto; Section 1.4(h) provides that, in the event of inconsistency, ambiguity or conflict, Change Order terms prevail over those in the body of the Agreement, and Agreement terms prevail over the terms of an Exhibit.

The parties entered into an October 11, 2006, Change Order implementing a Statement of Work, effective January 1, 2006.  That Statement of Work ("2006 SOW," Forsberg Decl. Ex. 7) provides a line-item breakdown of Plan-related responsibilities as among ACS (Xerox's predecessor), Motorola and Third Party providers.  The line items assigned to ACS, under the heading "Membership Services/Enrollment," included:

> 38. Sort, determine eligibility and transfer of signed plan participant forms to TP
>
> 42. ACS is the source and system of record for eligibility (e.g. ClaimFacts)
>
> 43. Transmit required eligibility information to Tps (e.g. Vision VSP, Humana)

Under the heading "HIPAA notification, administration, and privacy," the 2006 SOW assigns ACS responsibility for the following:

> 57. Verify eligibility using separation data from Motorola HR employment system feed (e.g. SAP)

Under the heading, "The Motorola plans themselves impose the following responsibilities on the plan administrator," ACS is identified as:

> 397. Primary party to construe and interpret the plan, decide all questions of fact and questions of eligibility and determine the amount, manner, and time of payment of any plan benefits.

(Forsberg Decl. Ex. 7.)

Although neither party notes this in its argumentation on these motions, the immediately following line of the 2006 SOW indicates that <u>Motorola</u> is responsible for:

> Construe and interpret the plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time of payment of any plan benefit in conjunction with primary responsibilities.

(<u>Id.</u>)

Motorola has also produced a second Statement of Work, effective January 1, 2009, with a header marked "Exhibit B to Motorola/ACS Change Order," but unaccompanied by any Change Order form. ("Proffered 2009 SOW," Forsberg Decl. Ex 9.) Motorola has tendered testimony that the Proffered SOW is a true and accurate copy of the SOW that became effective

on January 1, 2009, and that Xerox's eligibility determination responsibility "was consistent under the 2006 and 2009 SOWs, and at all times relevant to this dispute." (Forsberg Decl. ¶¶ 13, 15.)  Xerox challenges the authenticity of the Proffered 2009 SOW, based on the testimony of its witness that SOWs were adopted annually, via executed Change Orders.  The Proffered 2009 SOW includes the assignments of responsibility that are substantially the same as those quoted above from the 2006 SOW, albeit under different line numbers.  The Proffered 2009 SOW includes provisions assigning to "ACS/RAC" the responsibility of "Primary party to construe and interpret the plan, decide all questions of fact and determine the amount, manner and time of payment of any FSA/DCA plan benefits," assigning to "RAC" the responsibility of "Primary party to construe and interpret the plan, decide all questions of fact and determine the amount, manner and time of payment of any plan benefits," and assigning to Motorola the following responsibility: "Construe and interpret the plan, decide all questions of fact and questions of eligibility and determine the amount, manner and time of payment of any plan benefits in conjunction with primary responsibilities."  (Forsberg Decl. Ex. 8, lines 427, 428, 429.)

    Michael Eralie, former assistant vice president of operations at Xerox, testified in his deposition that it was generally one of Xerox's responsibilities to determine eligibility under the Plan through the termination of the relationship between Motorola and Xerox at the end of 2012 or January 2013.  ("Eralie Dep." 47:16-48:22, Forsberg Decl. Ex 9.)

    Beginning in 2008, eighteen former employees who were not eligible under the Plan (the "Employees") were provided benefits.  (See Pl. 56.1 ¶ 50.)  It is undisputed that the Employees were ineligible for benefits according to the criteria set out in the Plan.  (See id. ¶ 57.)  Motorola discovered the error in April 2012.  (Id. ¶ 51.)  Motorola alleges that it consulted

its outside ERISA counsel and was advised that it was required to provide the Employees with a reasonable period of time to secure replacement coverage.  (Id. ¶ 52.)  An internal Motorola powerpoint presentation dated May 24, 2012, and titled "U.S. Retiree Health Care Eligibility Issue," included a recommendation that retiree health care coverage be continued until September 20, 2012.  (Def. 56.1 Ex. E.)  Motorola informed Xerox on July 26, 2016, that it would notify the Employees the next day that they would have until December 31, 2012, to secure alternative coverage and that Motorola would not seek recoupment of the paid benefits.  (See id. ¶ 53; Forsberg Decl. Ex. 11.)

The Plan is "self-funded," meaning that all costs are paid out of Motorola's general assets.  (Id. ¶ 82.)  The amount wrongfully paid out in benefits to the Employees totaled $394,929.98.  (Id. ¶ 83.)

## DISCUSSION

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).  The Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor."  Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citation omitted).  When a properly supported motion for summary judgment is made, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) (internal quotation marks and citation omitted).  If the evidence presented by the non-moving party "is merely colorable, or is not significantly probable," summary judgment may be granted.  Id. at 250-51 (citations omitted).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment . . . . [M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  Where there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

Breach of Contract

       Motorola moves for summary judgment on its breach of contract claim, arguing that Xerox was responsible under the SOWs for Plan eligibility determinations under the Agreement and must therefore bear responsibility for the wrongful benefit payments.  Xerox cross-moves to dismiss the claim, arguing that Motorola cannot prove its contentions concerning the relevant contract terms and that Motorola, in its capacity as Plan Administrator and pursuant to Section 3.6 of the Agreement, was the entity responsible for benefit determinations.

       When contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate.  Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990) (citation omitted).  Only where the

language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly.  Id.; Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) ("[T]he threshold question in a dispute over the meaning of a contract is whether the contract terms are ambiguous.").  "[I]f an agreement is 'complete, clear and unambiguous on its face [, it] must be enforced according to the plain meaning of its terms.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177-78 (2d Cir. 2004) (citation omitted) (second alteration in original).

        Xerox's opposition to Motorola's motion, which is presented in conjunction with Xerox's argumentation in support of its own cross-motion to dismiss the contract claim, is focused principally on its contention that Motorola cannot prove the content of the relevant SOWs because it has not produced SOW documents specific to each of the years 2008 through 2012 with accompanying executed Change Orders.  This argument is unavailing, as the parties agree on the authenticity of the 2006 SOW, which has an effective date but no specified terminal date, and Motorola has proffered the declaration of a competent witness as to the authenticity of the Proffered 2009 SOW.  That witness further represents that the SOW provisions defining Xerox's eligibility determination responsibilities were, at all relevant times, consistent with those set forth in the 2006 SOW and the Proffered 2009 SOW.  Xerox has not proffered evidence controverting Motorola's contentions concerning the substance of the relevant SOW language.  The Court, accordingly, considers the 2006 SOW and the Proffered 2009 SOW, together with the Agreement, in evaluating the parties' arguments.  Xerox's other principal argument—that Motorola's claim must be dismissed because it has not demonstrated that it suffered damages that could not reasonably have been mitigated—is both inconsistent with New York law, under

which mitigation is an affirmative defense, and the record, which is replete with disputed factual issues that are relevant to the issue of mitigation.

The Court finds that the Agreement, including the SOWs, is unambiguous to the extent that it assigns responsibility for benefit eligibility determinations to <u>both</u> Xerox and Motorola. It is ambiguous, however with respect to the parties' specific respective responsibilities in connection with benefit eligibility determinations. While the body of the Agreement, in Section 3.6, recites that Motorola is responsible for providing Xerox with "information as to the benefits eligibility of employees and status of each plan participant," the SOWs refer solely to Xerox in connection with certain eligibility-related tasks and also provide that both Xerox and Motorola are responsible for construing and interpreting the Plan and for deciding "all questions of fact and questions of eligibility." (2006 SOW lines at 397-98; <u>see also</u> Proffered 2009 SOW at lines 427, 429.) Under these circumstances, the parties' conflicting factual proffers regarding their respective duties and the degree of accuracy to which they performed day to day responsibilities are material, and neither party is entitled to judgment as a matter of law with respect to the breach of contract claim. It will be for the fact finder to determine where responsibility for the wrongful benefit eligibility determinations lies.

Both parties' motions are therefore denied with respect to the breach of contract claim.

Xerox's Affirmative Defenses

Motorola has also moved for summary judgment dismissing Xerox's eleven

affirmative defenses.[2]

Consistent with the Court's determination concerning the breach of contract claim, the Court find that genuine issues of fact preclude summary judgment with respect to Xerox's First Affirmative Defense (failure to state a claim); Second Affirmative Defense (failure to satisfy conditions precedent); Fifth Affirmative Defense (Xerox acted on information provided by Motorola); and Eight Affirmative Defense (Xerox acted on information provided by Motorola).

Motorola's motion is granted as to Xerox's Sixth Affirmative Defense (acting in good faith), and Ninth Affirmative Defense (comparative negligence), because those defenses are not available with respect to a breach of contract claim. The motion is denied with respect to Xerox's Tenth Affirmative Defense— "Plaintiff's claim is barred by reason of its own negligence, willful conduct, culpable conduct, acquiescence, recklessness, fraud, deceit, misrepresentation, consent, approval or ratification"—in light of the many material factual disputes.

Motorola's motion is also denied as to Xerox's Third Affirmative Defense (mitigation of damages). Under New York law, "it falls to Defendant to prove both that Plaintiffs unreasonably failed to mitigate their damages and that reasonable efforts would have reduced their damages." Morgan Stanley High Yield Securities, Inc. v. Seven Circle Gaming Corp., No. 01 CV 7266, 2003 WL 25835939, at *3 (S.D.N.Y. Oct. 30, 2003). The Court finds that there is a genuine issue of material fact as to whether Motorola, which became aware of the

---

[2] Xerox has withdrawn its Fourth Affirmative Defense. (Pl. 56.1 ¶¶ 114-115; Xerox Opp. at 18.)

erroneous payments in April 2012 and did not cease paying the improper benefits until December of that year, unreasonably failed to mitigate its damages.  It is undisputed that Motorola became aware of the erroneous payments in April 2012.

<u>CONCLUSION</u>

Motorola's motion for summary judgment is granted with respect to Xerox's Sixth and Ninth Affirmative Defenses and is denied in all other respects.  Xerox's motion for summary judgment is denied in its entirety.

The final pre-trial conference for this case has been rescheduled to **June 15, 2017, at 3:00 p.m.**  The parties are directed to confer and file their joint pre-trial submissions in accordance with the Pre-Trial Scheduling Order (docket entry no. 13).  The parties are further directed to meet promptly with Magistrate Judge Pitman for settlement purposes.

This Memorandum Order and Opinion resolves docket entry numbers 87 and 98.

SO ORDERED.

Dated: New York, New York
       March 24, 2017

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge